IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 17, 2010 Session

# JOYCE VIA v. LARRY EDWARD OEHLERT, SR.

**Direct Appeal from the Chancery Court for Tipton County**
**No. 26938     William C. Cole, Chancellor**

**No. W2010-01290-COA-R3-CV - Filed December 10, 2010**

This appeal arises out of a complaint to dissolve a partnership. The plaintiff alleged that she and the defendant, an unmarried couple, acquired real property through joint efforts. She further alleged that she contributed to the improvement of the property and an increase in its value, giving rise to a partnership for profit and a right to a distribution of the partnership's assets following dissolution. The defendant denied that a partnership existed and counterclaimed for damages and attorney's fees arising out of the plaintiff's refusal to vacate the property following their break-up. At the ensuing bench trial, the defendant moved for a directed verdict on the plaintiff's claims. The trial court granted the motion and dismissed the plaintiff's claims, specifically finding that the plaintiff was unable to prove the existence of an express or implied partnership for profit between the parties. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed
and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J.,
W.S., and J. STEVEN STAFFORD, J., joined.

J. Thomas Caldwell, Ripley, Tennessee, for the appellant, Joyce Via.

William Dan Douglas, Jr., Ripely, Tennessee, for the appellee, Larry Edward Oehlert, Sr.

**OPINION**

## I.  Background and Procedural History

This appeal follows the break-up of an unmarried couple involved in an on-again, off-

again relationship.[1] The focus of this dispute is real property located at 2565 Simmons Road in Drummonds, Tennessee that the defendant/appellee, Larry Oehlert, Sr., purchased in 2002 under a lease-purchase contract. Mr. Oehlert, who at one point resided with the plaintiff/appellant, Joyce Via, contracted to purchase the Simmons Road property while romantically involved with another woman. In fact, Mr. Oehlert lived with this other woman at the Simmons Road residence for approximately one year following his purchase of the property. In 2003, however, he and Ms. Via rekindled their relationship. Some months later, Ms. Via sold her mobile home and moved into the Simmons Road residence.

The parties lived together in the Simmons Road residence for several years, each contributing to its improvement. Ms. Via's contributions to the property included helping to construct a woodworking shop; purchasing lumber, nails, concrete, gravel, sand, and other materials used to improve the property; working on the roof; digging a hole for a patio; planting flowers, shrubs, and trees; and remodeling the home's interior. Ms. Via also put all of the money she could spare into improvements to the property, including the purchase of blinds, drapes, wallpaper, plumbing, and electrical components. Ms. Via estimated that she spent at least $20,000 on improvements to the property, in addition to a substantial amount of physical labor she expended without compensation.

During the four-and-a-half years preceding this lawsuit, Ms. Via resided in the Simmons Road residence while Mr. Oehlert worked out of state. Mr. Oehlert paid the house payments throughout this period, and Ms. Via paid the utility bills. The parties ended their relationship in 2009, leading to the filing of the complaint in this case. Since their break-up, Ms. Via has remained in sole possession of the residence without paying rent. According to Ms. Via, she recently received an offer on the property for $100,000 to $125,000, which Mr. Oehlert declined.

On May 12, 2009, Ms. Via filed this action to dissolve an alleged partnership between her and Mr. Oehlert, for an accounting of the partnership assets, and for a distribution of those assets. She alleged that, although the real estate was titled in Mr. Oehlert's name, it was purchased with joint funds with the intent that it would be the property of both parties. She further alleged that she personally improved the property, maintained the property, and performed the duties of a homemaker. It was her position that the parties functioned as a partnership, which owned assets that included the Simmons Road property, its contents, and the parties' vehicles. In the alternative, she averred that the property should be held in a constructive or resulting trust. Mr. Oehlert filed an answer denying the substance of the complaint and a counterclaim seeking possession of the property, damages, and attorney's fees related to Ms. Via's refusal to vacate the residence. Mr. Oehlert maintained that the

---

[1]These facts are derived solely from the plaintiff's proof.

parties did not engage in a business relationship for profit and that, even if they did, any contributions Ms. Via made to the improvement of the property were far outweighed by the subsequent benefits she enjoyed at his expense, including living in the residence for many years without paying rent.

At trial, Ms. Via conceded that the Simmons Road property was titled in Mr. Oehlert's name only, that the parties maintained separate bank accounts and separate vehicles, and that the parties never held any joint property during their relationship. Additionally, Ms. Via acknowledged that she and Mr. Oehlert did not enter into a written partnership agreement concerning the Simmons Road property. With respect to conversations the couple had regarding the sale of the property, Ms. Via testified:

Q       Okay. Now you and [Mr. Oehlert] talked about doing something with this property?

A       Well, you know how people - -

Q       That's a question.

A       Yes, sir. We were sitting - - you know, sitting on the porch after working out there, and he said, "Well, girl, we've got one more project. We've got to deck around the pool up there and a sidewalk to the pool ladder and a little gazebo to put the hot tub in, and we'll about have this work done, and we're going to quit and sit down and enjoy it."

         And, of course, Interstate 69 there's a rumor is coming in through down the road, and we was talking about selling [the residence]. He said, "Well, if we sell this place, we're going to sell it lock, stock and barrel. We ain't moving nothing." He said, "I'm making good money now. We can buy us some new furniture when we get to where we're going and buy us some land where we can hunt and fish and enjoy it."

         You know how just couples just sit and talk about what they would like to accomplish, because the way the property at 2565 Simmons is now compared to what it was when I moved in there, it's a hundred percent turnaround. It is nice.

Although Ms. Via testified that she contributed to an improvement in the property, she importantly did not testify that the parties ever discussed, contemplated, or understood their

-3-

efforts concerning the property as an undertaking for profit. At the conclusion of Ms. Via's testimony, Mr. Oehlert moved for a directed verdict pursuant to Rule 50.01 of the Tennessee Rules of Civil Procedure.

The trial court granted the defendant's motion and dismissed Ms. Via's complaint in its entirety. The court's judgment stated in full:

> This cause came on to be heard on this 29th day of April, 2010 before the Honorable William Cole, Chancellor, upon Complaint, Answer and Counter-Claim, Reply to Counter-Claim, statements of witnesses, introduction of exhibits, statements of counsel and the entire record in this cause, from all of which the Court finds that the Plaintiff/Counter-Defendant was unable to prove that there was any partnership either expressed or implied between the parties for the purposes of doing business together for profit.
>
> The Court finds that the Complaint fails to state a claim of action against the Defendant/Counter-Claimant upon which relief can be granted and therefore the Complaint of the Plaintiff/Counter-Defendant, Joyce Via, is hereby dismissed with all costs assessed against the Plaintiff/Counter-Defendant, Joyce Via for which an execution will issue, if necessary.[2]

Later, the court entered an order dismissing Mr. Oehlert's counterclaim without prejudice. Ms. Via timely appealed.

## II. Issue Presented

The sole issue on appeal is whether the parties entered into a joint venture or implied partnership that owns the Simmons Road property. Ms. Via does not argue that she was

---

[2]The parties agree in their briefs that Mr. Oehlert moved for a directed verdict. Rule 41.02, however, governs dismissal of a plaintiff's claim at the conclusion of his or her proof for failure to demonstrate a right to relief. Tenn. R. Civ. P. 41.02(2). As this Court has explained, "directed verdicts have no place in bench trials." *Boyer v. Heimermann*, 238 S.W.3d 249, 254 (Tenn. Ct. App. 2007). We will therefore construe the trial court's judgment as granting a Rule 41.02 dismissal. *Id.* (footnote omitted). Further, although it does not apply in this case, we note for the benefit of the Bar that amended Rule 41.02, effective July 1, 2010, provides that a court granting involuntary dismissal "shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 41.02(2). The 2010 Advisory Commission Comment to Rule 41.02 expressly recognizes that the amended rule, in conformity with Rule 52.01, requires the issuances of findings of fact and conclusions of law without a request from the parties.

entitled to a constructive or resulting trust, *see generally Rowlett v. Guthrie,* 867 S.W.2d 732 (Tenn. Ct. App. 1993), and, thus, has waived these issues on appeal. *See* Tenn. R. App. P. 27(a)(7); Tenn. Ct. App. R. 6(a), (b); *Bean v. Bean*, 40 S.W.3d 52, 55-56 (Tenn. Ct. App. 2000) (citations omitted).

### III. Standard of Review

When a motion for involuntary dismissal is made at the conclusion of the plaintiff's proof in a bench trial, "the trial court must impartially weigh the evidence as though it were making findings of fact and conclusions of law after all the evidence has been presented." *Building Materials Corp. v. Britt*, 211 S.W.3d 706, 711 (Tenn. 2007); *Thompson v. Hensley*, 136 S.W.3d at 929; *see also Burton v. Warren Farmers Coop*., 129 S.W.3d at 520. If a plaintiff has failed to demonstrate her right to relief by a preponderance of the evidence under the facts as found by the court and pursuant to the applicable law, then the case should be dismissed. *Building Materials Corp. v. Britt*, 211 S.W.3d at 711; *Burton v. Warren Farmers Coop*., 129 S.W.3d at 520-21.

The standard of review of a trial court's decision to grant a Rule 41.02 involuntary dismissal is governed by Rule 13(d) of the Tennessee Rules of Appellate Procedure. *Building Materials Corp. v. Britt*, 211 S.W.3d at 711. This standard is appropriate because the trial court has used the same reasoning to dispose of the motion that it would have used to make a final decision at the close of all the evidence. *Burton v. Warren Farmers Coop*., 129 S.W.3d at 521. Thus, we must review the record on appeal *de novo* with a presumption that the trial court's factual findings are correct. We will affirm the trial court's decision unless the evidence preponderates against the trial court's factual determinations or unless the trial court has committed an error of law affecting the outcome of the case. We will also give great weight to the trial court's assessment of the evidence because the trial court is in a much better position to evaluate the credibility of the witnesses. *Burton v. Warren Farmers Coop*., 129 S.W.3d at 521.

*Boyer v. Heimermann*, 238 S.W.3d 249, 254-55 (Tenn. Ct. App. 2007).

### IV. Analysis

Because the parties never married, Ms. Via must rely upon the laws of partnership, not the laws of domestic relations, to establish her claim to an interest in the Simmons Road property. *Story v. Lanier*, 166 S.W.3d 167, 177 (Tenn. Ct. App. 2004) (citing *Martin v.*

*Coleman*, 19 S.W.3d 757, 761 (Tenn. 2000)). "The legislature has defined a partnership as 'an association of two (2) or more persons to carry on as co-owners of a business or other undertaking for profit.'" *Lanier*, 166 S.W.3d at 175-76 (Tenn. Ct. App. 2004) (citing Tenn. Code Ann. § 61-1-101(6) (2003)). Our supreme court has explained:

> In determining whether one is a partner, no one fact or circumstance may be pointed to as a conclusive test, but each case must be decided upon consideration of all relevant facts, actions, and conduct of the parties. *Roberts v. Lebanon Appliance Service Co.*, 779 S.W.2d 793, 795 (Tenn. 1989). If the parties' business brings them within the scope of a joint business undertaking for mutual profit-that is to say if they place their money, assets, labor, or skill in commerce with the understanding that profits will be shared between them-the result is a partnership whether or not the parties understood that it would be so. *Pritchett v. Thomas Plater & Co.*, 144 Tenn. 406, 232 S.W. 961, 969-70 (1921).

> Moreover, the existence of a partnership depends upon the intention of the parties, and the controlling intention in this regard is that ascertainable from the acts of the parties. *Wyatt v. Brown*, 39 Tenn. App. 28, 281 S.W.2d 64, 67 (1955). Although a contract of partnership, either express or implied, is essential to the creation of partnership status, it is not essential that the parties actually intend to become partners. *Wyatt*, 281 S.W.2d at 67. The existence of a partnership is not a question of the parties' undisclosed intention or even the terminology they use to describe their relationship, nor is it necessary that the parties have an understanding of the legal effect of their acts. *Roberts*, 779 S.W.2d at 795-96. It is the intent to do the things which constitute a partnership that determines whether individuals are partners, regardless if it is their purpose to create or avoid the relationship. *Wyatt*, 281 S.W.2d at 67. Stated another way, the existence of a partnership may be implied from the circumstances where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money.

*Bass v. Bass*, 814 S.W.2d 38, 41 (Tenn. 1991).

In her brief, Ms. Via acknowledges that the alleged partnership between the parties is more akin to a joint venture. "A joint venture is similar, but not identical, to a partnership, and has been described by our Supreme Court as 'something like a partnership, for a more limited period of time, and a more limited purpose.'" *Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.*, 45 S.W.3d 588, 605 (Tenn. Ct. App. 2001) (quoting *Fain v. O'Connell*,

909 S.W.2d 790, 792 (Tenn. 1995)).  More specifically,

> "A joint venture is an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, but without creating a partnership in the legal or technical sense of the term . . . ."

*Robertson v. Lyons*, 553 S.W.2d 754, 757 (Tenn. Ct. App. 1977) (quoting *Spencer Kellogg & Sons, Inc. v. Lobban*, 315 S.W.2d 514, 520 (Tenn. 1958)).  "Joint ventures are governed by the same rules of law as those governing partnerships." *Messer Griesheim*, 45 S.W.3d at 605-06 (citing *Federated Stores Realty, Inc. v. Huddleston*, 852 S.W.2d 206, 212 (Tenn. 1992)).  Because the parties did not enter into a written agreement, the burden is on Ms. Via to prove the existence of an implied joint venture by clear and convincing evidence. *See Story*, 166 S.W.3d at 175 (citations omitted).

The shortcoming in Ms. Via's position is that she is unable to demonstrate that the parties engaged in the improvement of the property as a business venture for profit. Although Tennessee courts have found implied partnerships between unmarried couples, *e.g. Bass v. Bass*, 814 S.W.2d 38 (Tenn. 1991); *Montgomery v. Montgomery*, 181 S.W.3d 720 (Tenn. Ct. App. 2005), those partnerships arose out of the parties' joint contributions to for-profit business ventures.  The limited evidence before us reveals that the parties in this case cohabited and, during the pendency of their relationship, made certain improvements to Mr. Oehlert's property.  It does not, however, suggest that the parties jointly purchased or held the property, that the parties made said improvements for the purpose of selling the property for profit, that Ms. Via expected to receive a return on her investment in the property beyond her personal use and enjoyment, or that the combination of their efforts, money, skill, et cetera was a business undertaking.  Here, Ms. Via essentially seeks a division of residential real property similar to that which would be available to a married person.  Although "[a] marriage would have created a form of "partnership" entitling each party to the benefits of the statute regulating the dissolution of marriage" *Martin*, 19 S.W.3d at 761, the parties in this case were not married.  And to hold that the parties entered into a joint venture for profit solely because they lived together and jointly contributed to the appreciation of real property would pull the theory of implied partnership/joint venture too far from its moorings.  We therefore affirm the decision of the trial court.

## V. Conclusion

For the foregoing reasons, we affirm the decision of the trial court. Costs of this appeal are assessed to the appellant, Joyce Via, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE