FILED
07/24/2017
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 16, 2017 Session

**IN RE JONATHAN S. Jr.**

**Appeal from the Juvenile Court for Davidson County
No. 2009-2850, PT208361 Sheila Calloway, Judge**

_____

**No. M2016-01365-COA-R3-JV**

_____

This appeal involves a father's efforts to modify a permanent parenting plan. The father filed a petition in which he requested to be named the primary residential parent of the parties' minor child. At the close of the father's proof, the mother moved to dismiss the petition on the ground that the father failed to carry his burden of proving a material change in circumstance. The trial court agreed, found that the father's evidence was insufficient to establish a material change in circumstances, and dismissed his petition. The father appealed. On appeal, we conclude that the evidence in the record preponderates against the trial court's findings. We therefore reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Reversed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Tarsila Crawford, James Widrig, and Megan Ross Bain, Nashville, Tennessee, for the appellant, Jonathan S.

Laura A. Frost, Gallatin, Tennessee, for the appellee, Elizabeth S.

Laura A. Stewart, Nashville, Tennessee, Guardian Ad Litem.

# OPINION

## BACKGROUND AND PROCEDURAL HISTORY

Elizabeth S. ("Mother") and Jonathan S. ("Father") have one child together, Jonathan S. Jr., born in February 2009.[1] Mother and Father were never married, and their relationship ended several months after the child was born. In June 2014, the Davidson County Juvenile Court entered an agreed permanent parenting plan that designated Mother as the child's primary residential parent and permitted Father to exercise parenting time one weekend per month and for extended periods during school holidays. By then, Mother was married and living in Nashville with her husband; Father was living in Michigan.

In late June 2015, Father took physical custody of the child to exercise his summer parenting time in accordance with the parenting plan. On July 2, 2015, while the child was still in Michigan with Father, Father filed a petition in the Davidson County Juvenile Court seeking a modification of the parenting plan to designate him as primary residential parent as well as a temporary restraining order to suspend Mother's parenting time. According to the petition, Mother had recently separated from her husband and moved in with her mother (the child's maternal grandmother). However, Mother had been kicked out of her mother's home following a physical altercation between the two that occurred on June 6, 2015. The petition alleged that the altercation took place in front of the child and resulted in Mother being arrested and charged with assault and domestic violence. The petition further alleged that Mother had no permanent place to live and was temporarily living in Texas. In an attached affidavit, Father expressed his belief that returning the child to Mother's care when his summer parenting time ended could cause immediate and irreparable harm in light of Mother's "unpredictable and volatile behavior in the past months."

On the same day that Father's petition was filed, a juvenile court magistrate entered an ex parte restraining order that temporarily suspended Mother's parenting time. Shortly thereafter, the magistrate appointed a guardian ad litem to represent the child's interests in the case. Following a preliminary hearing on July 29, 2015, the magistrate ordered that the initial parenting plan be reinstituted pending further proceedings. That same day, Father filed a motion seeking permission to keep the child in Michigan and enroll him in school there. The magistrate denied Father's motion but entered a restraining order that prevented Mother from removing the child from Davidson County Schools. As a result, the child returned to Mother's care in Nashville and enrolled in school there in August 2015.

---

[1] In cases involving minor children, it is the policy of this Court to redact the names of certain individuals in order to protect the children's privacy.

On September 16, 2015, the magistrate conducted a final hearing on Father's petition to modify the parenting plan. Following the hearing, he entered a written order containing findings of fact and conclusions of law. The magistrate found that the matter was an initial custody determination and, as such, discussed the "best interest" factors set forth in Tennessee Code Annotated section 36-6-106 without determining whether a material change in circumstance had occurred. After analyzing the relevant statutory factors, the magistrate adopted Father's proposed parenting plan that designated him as the child's primary residential parent. As a result, the child moved to Michigan with Father and enrolled in school there in September 2015.

Mother timely filed a request for a rehearing before the juvenile court judge as well as a stay of the magistrate's order.[2] The juvenile court judge denied Mother's request for a stay, and the child remained in Michigan with Father pending the rehearing. The case was eventually set for a final hearing in April 2016.

Father, testifying first at the final hearing, discussed the events that surrounded the filing of his petition to modify the parenting plan. According to Father, Mother worked at a ranch near Nashville after the original parenting plan was entered in June 2014. Mother, her husband, and the child all lived in a bunkhouse at the ranch during that time. Mother and her husband separated sometime around February 2015. At about the same time, the ranch where Mother had been working and living was sold by its owners, and Mother lost her job and home as a result. In March 2015, Father drove from Michigan to Nashville to exercise weekend parenting time with the child. During that visit, Father helped Mother pack to move out of the bunkhouse and into her mother's house. Father knew that Mother had been involved in physical altercations with her mother in the past but thought their relationship had improved.

Father testified that he attempted to call Mother numerous times in late May and early June 2015 to discuss a vacation he planned to take with the child later that summer. After he was unable to reach Mother for a period of time, he received a call from Mother's sister around June 13, 2015. Based on the information that Mother's sister relayed to him, Father believed that Mother and the child were no longer living with her mother. Still unable to reach Mother, Father anonymously contacted the Tennessee Department of Children's Services ("DCS") and requested an investigation of the child's safety. Shortly thereafter, Father was able to reach Mother and arrange a time to exchange the child for his summer parenting time. When Father arrived in Nashville, Mother directed him to the house of a friend rather than to her mother's house. When he arrived at the house, Mother confirmed to Father that she and the child were no longer living with her mother. She told him that they had moved out after a physical altercation between her and her mother. She explained she had thrown a bowl of grits at her mother

---

[2] Tennessee Code Annotated section 37-1-107(d) (2014) permits any party to request a rehearing before a juvenile court judge of certain matters heard by a magistrate.

during an argument about money and the two ended up scuffling on the floor. She admitted that the child witnessed the fracas and, in fact, emerged from it with grits on his face. She further admitted that she was arrested and charged with domestic abuse as a result of the incident, but the charge was subsequently dismissed. Father testified that, during the conversation, Mother expressed her intent to move to Texas because she no longer had a job, home, or support group in Nashville.[3]

A DCS report admitted into evidence at trial reflected that a DCS case worker visited Mother on July 20, 2015. According to the report, Mother was living in the Nashville area at the home of a friend. Father testified that the friend with whom Mother was living at that time was not the same friend with whom she and the child were living when he visited to pick up the child in June 2015. In any event, the report stated that the home was "clean, with adequate space for the child" and "presented as appropriate with no concerns to report." It further stated, however, that the homeowner's son, who also lived in the home, had an extensive criminal record with convictions for several DUIs, vandalism, and drug-related offenses. Additionally, it stated that Mother was receiving treatment for depression and was only earning around $500 per month from working odd jobs. While it is unclear how long the child actually lived with Mother in that house, it appears from the record that he did live there for a period of time between the magistrate's July 2015 order that reinstated the initial parenting plan and its September 2015 order that designated Father as primary residential parent.

Father testified that the child moved to Michigan with him in September 2015 after the magistrate designated him as primary residential parent. He further testified that the child exhibited anxiety and behavioral problems when he first moved to Michigan in September 2015. At trial, he attributed those issues to Mother's insistence on treating the child like an adult and including him in adult conversations and decisions. According to Father, Mother had admitted to him in the past that the child's life experiences in her care had forced him to grow up quickly and develop behavioral problems. In any event, Father testified that he had enrolled the child in therapy to address those issues and that they had improved significantly in his care.

At the close of Father's proof, Mother's attorney made an oral motion for a directed verdict.[4] In support of the motion, she argued that Father had failed to present

---

[3] Father testified that Mother lived in Texas briefly after the child moved to Michigan with him in September 2015. While it is unclear whether and for how long Mother actually lived in Texas, Father acknowledged that she was living in the Nashville area at the time of trial.

[4] In addition to his own testimony, Father presented the testimony of his mother (the child's paternal grandmother) and the child's babysitter in Michigan. Their testimony was brief and does not need to be recounted in this opinion. Due to scheduling conflicts, Mother also presented the testimony of several witnesses before Father's final witness testified. However, the trial court's order states that it considered only the evidence presented by Father in ruling on Mother's motion for a directed verdict.

evidence of a material change in circumstance occurring after the initial parenting plan was entered. In response, both Father's attorney and the guardian ad litem argued that Mother's instability–evidenced by her unsettled living arrangements as well as her altercation with her mother and subsequent arrest– was a material change in circumstance sufficient to support a modification of the child's primary residential parent. After listening to the arguments presented, the judge announced that she would take the matter under advisement.

The trial court entered its final order on May 31, 2016. The court found:

> In this case, there is no question that the Mother had a very difficult four month period of time. During that time, she separated and later divorced her husband, she was forced to move out of her family home since it was sold, she moved in with her mother and had a domestic dispute with her that resulted in an arrest even though the charges were later dismissed, and she moved in with a friend who she learned had a significant criminal history.
>
> It is the burden of the Petitioner by a preponderance of the evidence to show that this difficult period caused an inability to follow the parenting plan or a showing that the difficulties affected the best interest of the child. Even viewing the evidence in the light most favorable to the Petitioner, this court does not find that it rises to the level of a material change of circumstances. All parties testified that the child is doing well. Despite the behavior problems the Father experienced with the child at the beginning of his school year, he is doing well and thriving. There is no evidence that other than his final move with the Father, that there was a material change that affected his best interest. In fact, the child did extremely well in kindergarten throughout the entire ordeal.

Based on the foregoing, the court held that "the motion for a directed verdict is granted" and dismissed Father's petition to modify the parenting plan. The court directed the parties to continue operating pursuant to the initial parenting plan after the child finished the school year in Michigan with Father. Father timely filed a notice of appeal to this Court.

### ISSUES

Father and the guardian ad litem present the following issues on appeal, as we have restated them:

1. Whether the trial court erred when it applied an incorrect legal standard in dismissing Father's petition on a motion for a directed verdict.

2. Whether the trial court erred in concluding that Father failed to present sufficient evidence of a material change in circumstance to support a modification of the primary residential parent.

## STANDARD OF REVIEW

Ascertaining the appropriate standard of review in this case requires us to address Father's first issue on appeal. As we noted above, the trial court dismissed Father's petition pursuant to Mother's motion for a directed verdict. The trial court's order clearly reflects that it construed the motion as one for a directed verdict.[5] As Father correctly asserts in his appellate brief, motions for a directed verdict made pursuant to Rule 50 of the Tennessee Rules of Civil Procedure "have no place in bench trials." *Boyer v. Heimermann*, 238 S.W.3d 249, 254 (Tenn. Ct. App. 2007). Because this case was tried without a jury, both parties agree that the proper motion would have been a motion for involuntary dismissal pursuant to Rule 41.02(2) of the Tennessee Rules of Civil Procedure. *Id*.

A Rule 50 motion for a directed verdict differs markedly from a Rule 41.02(2) motion for involuntary dismissal. *Burton v. Warren Farmers Co-op.*, 129 S.W.3d 513, 520 (Tenn. Ct. App. 2002). The most obvious difference between the two is that a motion for a directed verdict has no place in a bench trial while a motion for involuntary dismissal has no place in a jury trial. *Id*. Beyond that procedural difference, the two motions serve different purposes and require the court to employ substantially different methods of analysis. *Id*. A motion for a directed verdict presents the legal question of whether the nonmoving party has presented *any* evidence to create an issue of fact for the jury. *Richardson v. Miller*, 44 S.W.3d 1, 30 (Tenn. Ct. App. 2000). In answering that question, the court may not weigh the evidence or evaluate the credibility of witnesses. *Burton*, 129 S.W.3d at 520. Rather, it must review the evidence in the light most favorable to the nonmoving party, allow the nonmoving party the benefit of all reasonable inferences, and disregard all evidence contrary to the nonmoving party's position. *Id*. A motion for involuntary dismissal, on the other hand, involves a totally different analysis. In ruling on a motion for involuntary dismissal, the court may "impartially weigh the evidence as though it were making findings of fact and conclusions of law after all the evidence has been presented." *See Bldg. Materials Corp. v. Britt*, 211 S.W.3d 706, 711 (Tenn. 2007). If the court finds that the evidence is not sufficiently persuasive to preponderate in the nonmoving party's favor, then the case should be dismissed. *Id*.

---

[5] The trial court's order states, "At the close of the Petitioner's proof, the Respondent asked for a motion for a directed verdict. Based on the motion, this court must review all of the evidence presented in the light most favorable to [Father]." Thus, it is clear that the trial court analyzed the motion as one for a directed verdict. *See Burton v. Warren Farmers Co-op.*, 129 S.W.3d 513, 520 (Tenn. Ct. App. 2002) (explaining that, when presented with a motion for a directed verdict, the court must "review the evidence in the light most favorable to the non-moving party").

Despite the differing methods of analysis associated with the two motions, a trial court's grant of a motion for a directed verdict in a bench trial does not necessarily require reversal on appeal. Because less certainty is required to grant a motion for involuntary dismissal than is required to grant a motion for a directed verdict, *Burton*, 129 S.W.3d at 520, this Court has frequently resolved such errors by simply construing the trial court's order as if it were an order granting a motion for involuntary dismissal. *See, e.g., Parsons v. Parsons*, No. W2016-01238-COA-R3-CV, 2017 WL 1192111, at *5 (Tenn. Ct. App. Mar. 30, 2017); *Nazi v. Jerry's Oil Co., Inc.*, No. W2013-02638-COA-R3-CV, 2014 WL 3555984, at *4 (Tenn. Ct. App. July 18, 2014); *Wilson v. Monroe Cnty.*, 411 S.W.3d 431, 439 (Tenn. Ct. App. 2013); *Main Street Market, LLC v. Weinberg*, 432 S.W.3d 329, 336 (Tenn. Ct. App. 2013). We see no reason to deviate from that practice in this case.[6] We therefore review the trial court's factual findings using the standard outlined in Rule 13 of the Tennessee Rules of Appellate Procedure. As we have explained:

> This court uses the familiar Tenn. R. App. P. 13(d) standard to review a trial court's disposition of a Tenn. R. Civ. P. 41.02(2) motion because the trial court has used the same reasoning to dispose of the motion that it would have used to make a final decision at the close of all the evidence. Thus, we must review the record on appeal de novo with a presumption that the trial court's findings are correct. We will affirm the trial court's decision unless the evidence preponderates against the trial court's factual determinations or unless the trial court has committed an error of law affecting the outcome of the case. We give great weight to the trial court's assessment of the evidence because the trial court is in a much better position to evaluate the credibility of the witnesses.

*Burton*, 129 S.W.3d at 521 (internal citations omitted). We review the trial court's conclusions of law de novo with no presumption of correctness. *Lovelace v. Copley*, 418 S.W.3d 1, 16 (Tenn. 2013).

---

[6] It is not immediately clear whether Father argues on appeal that the trial court's decision to treat the motion as a motion for a directed verdict was a reversible error. In his initial appellate brief, Father merely urges this Court to "construe the trial court's order as if it were an order granting a Tenn. R. Civ. P. 41.02 dismissal[.]" He states in his reply brief, however, "The trial [c]ourt's failure to conduct the correct legal analysis under an involuntary dismissal standard did harm Father . . . . At minimum, this case should be remanded to the trial court for a corrected order . . . based on the correct legal standard." In any event, because a reply brief is a response to the arguments of the appellee and not a vehicle for raising new issues or making new requests for relief, *Owens v. Owens*, 241 S.W.3d 478, 499 (Tenn. Ct. App. 2007), we decline to devote further discussion to the issue.

DISCUSSION

Turning to the substantive merits of the case, we consider Father's argument that the trial court erred in finding that he failed to present sufficient evidence of a material change in circumstance to support a modification of the primary residential parent. A request to modify the primary residential parent or residential parenting schedule of an existing parenting plan requires a two-step analysis. *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003). First, the party petitioning to change the parenting plan must establish that a material change in circumstance has occurred. *In re M.J.H.*, 196 S.W.3d 731, 744 (Tenn. Ct. App. 2005). If the court determines that a material change in circumstance has occurred, then it must determine whether the modification is in the child's best interest. *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002). If the court determines that a material change in circumstance has not occurred, then it is not required to make a best interest determination and must deny the request for a modification. *Pippin v. Pippin*, 277 S.W.3d 398, 405 (Tenn. Ct. App. 2008). Thus, the threshold issue in every case in which a party seeks to modify an existing parenting arrangement is whether a material change in circumstance has occurred since the existing primary residential parent determination. *In re M.J.H.*, 196 S.W.3d at 744.

In his appellate brief, Father cites cases discussing the "very low threshold for establishing a material change in circumstances." *See Rose v. Lashlee*, No. M2005-00361-COA-R3-CV, 2006 WL 2390980, at *2 n.3 (Tenn. Ct. App. Aug. 18, 2006). However, a material change in circumstance for purposes of modifying the primary residential parent is a concept distinct from a material change in circumstance for purposes of modifying a residential parenting schedule.[7] *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007). The cases cited by Father discuss Tennessee Code Annotated section 36-6-101(a)(2)(C), which governs modifications to an existing residential parenting schedule. The General Assembly enacted that subsection in 2004 to "make it easier to establish that a material change of circumstances has occurred" in cases pertaining to the modification of a residential parenting schedule. *Boyer*, 238 S.W.3d at 259. Because Father's petition seeks a modification pertaining to the primary residential parent, however, the "very low threshold" set forth in that subsection does not apply in this case.

Tennessee Code Annotated section 36-6-101(a)(2)(B), which governs modifications pertaining to the primary residential parent, sets forth the threshold for establishing a material change in circumstance in this case. That subsection provides:

> If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the

---

[7] See *Armbrister v. Armbrister*, 414 S.W.3d 685, 697-704 (Tenn. 2013) for further discussion of the historical development and current status of the material change in circumstance concept in Tennessee.

evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

Because not all changed circumstances of parents and their children warrant a reconsideration of the child's best interest, a change in circumstance generally must be "significant" before it will be considered material. *In re T.C.D.*, 261 S.W.3d 734, 744 (Tenn. Ct. App. 2007). Additionally, while there are no hard and fast rules for determining whether a material change in circumstance has occurred, courts may consider the following factors: whether the change occurred after entry of the order to be modified, whether the change was reasonably anticipated when the previous order was entered, and whether the change affects the child's well-being in a meaningful way. *Kendrick*, 90 S.W.3d at 570.

Based on the record before us, we must agree with Father that the preponderance of the evidence does not support the trial court's factual determinations. The record reflects that Mother was married and was working and living at a ranch near Nashville when the initial permanent parenting plan was entered in June 2014. Mother and her husband separated sometime around February 2015. Shortly thereafter, the ranch where Mother had been working and living for three years was sold by its owners. Having lost her husband, her job, and her home in a short period of time, Mother briefly moved in with her mother. That arrangement was short-lived, however, and Mother moved out following an altercation with her mother that resulted in her arrest. Mother moved two more times in the Nashville area before moving to Texas and then back to the Nashville area. According to the DCS report submitted at trial, Mother was receiving treatment for depression and did not have a steady job during that time. Compared to the apparent stability in Mother's life when the initial permanent parenting plan was entered, it is not a stretch to say that the changes that occurred in Mother's life in 2015 were significant. Faced with that evidence, however, the trial court found only that Mother "had a very difficult four month period of time." The problem with the trial court's assessment, in our view, is that it infers a subsequent improvement in Mother's stability that is not reflected in the record. While a fleeting period of hardship may not rise to the level of a material change in circumstance, it is difficult to make that determination without evidence that the period of hardship is, in fact, fleeting. Because the trial court dismissed Father's petition without hearing Mother's evidence, we are left to wonder whether Mother's living arrangement at the time of the hearing was permanent or merely the latest in an ongoing series of moves. Likewise, we do not know whether Mother found a steady source of income at the time of the hearing. Additionally, the evidence presented suggests that the changes in Mother's life may have affected the child's well-being in a meaningful way. According to Father, Mother admitted that the child's experiences in

her care contributed to his anxiety and behavioral issues. Nevertheless, it appears that the trial court attributed the child's behavioral problems solely to his move from Tennessee to Michigan. While we are cognizant of the deference that we must afford to the trial court's credibility determinations, we are skeptical of its apparent determination that none of the child's behavioral issues resulted from the instability that he experienced in Mother's care in 2015. Indeed, the trial court's finding that the child's behavior improved during the time that he was living in Michigan with Father seems to indicate that Mother's instability affected his well-being in a meaningful way.

For the foregoing reasons, we conclude that the trial court erred in granting Mother's motion for involuntary dismissal (termed a motion for a directed verdict at trial). It is our view that Father met his initial burden of proving, by a preponderance of the evidence, a material change in circumstance for purposes of modifying the primary residential parent. Thus, the burden of proof shifted to Mother. While Mother's evidence may demonstrate that the changed circumstances in her life were only temporary and do not warrant such a modification, the record before us does not contain evidence to support that conclusion. We therefore reverse the trial court's dismissal of Father's petition to modify the permanent parenting plan and remand this case to the trial court so that Mother may present her evidence.

## CONCLUSION

The trial court's judgment is reversed, and this case is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellee, Elizabeth S., for which execution may issue.

_____
ARNOLD B. GOLDIN, JUDGE