IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 4, 2021

## IN RE TIFFANY B.[1]

**Appeal from the Circuit Court for Washington County
No. 39571     James E. Lauderback, Judge**

_____

### No. E2020-00854-COA-R3-PT

_____

The trial court terminated a father's parental rights to his daughter based upon two statutory grounds: persistence of conditions and failure to manifest a willingness and ability to assume custody of the child.  We reverse the trial court's decision as to the first ground, but affirm as to the second.  We also affirm the trial court's finding that termination of the father's parental rights is in the child's best interests.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment Reversed in Part; Affirmed in Part; Vacated in Part; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and CARMA DENNIS MCGEE, J., joined.

Russell Kloosterman, Johnson City, Tennessee, for the appellant, Kevin H.

Stephanie Sherwood, Johnson City, Tennessee, for the appellees, David B. and Pamela B.

### OPINION

### Background

The child at issue in this termination of parental rights case, Tiffany B. ("the Child"), is the daughter of Kathryn B. ("Mother") and Kevin H. ("Father").  Mother suffers from various intellectual and mental disorders, including bi-polar and schizoaffective disorder.  Consequently, Mother receives substantial assistance from her parents, David B. and Pamela B. (together, "Petitioners").  David B., a doctor, manages Mother's finances for

_____

[1] It is the policy of this Court to initialize the names of the children and parties in parental termination cases in order to protect the identity of minors.

1

her. When the Child was born in 2017, Mother moved in with Petitioners so Petitioners could assist Mother with the Child. The Child has lived in the home of the Petitioners ever since,[2] although Mother now lives in her own apartment nearby. By all accounts, the Petitioners have always been the caretakers of the Child, but Petitioners, Mother, and Father maintain an amicable relationship. Father at one point lived with Mother and the Petitioners in the Petitioners' home.

Father has been very involved in the Child's life. Father regularly exercises visitation with the Child, sends her toys and clothing on her birthday and other holidays, and overall has a great deal of affection for the Child. Father has also given money to the Petitioners on a few occasions and has offered to purchase essentials such as diapers and wipes for Petitioners if necessary. It is also undisputed, however, that Father, like Mother, suffers from severe intellectual impairments and, in some respects, struggles to care for himself independently. The record reflects that Father lives in a dilapidated trailer that is in extremely poor condition. The photographs of the trailer in the record show that the trailer lacks adequate flooring and roofing, and that there are large amounts of debris, furniture, and garbage piled within. The record also contains a photograph that appears to depict animal feces in the trailer. Father struggles with reading and writing, seeking healthcare for himself, and self-care generally. For instance, the record reflects that Father is missing several teeth, and he often comes to visitation unwashed and in dirty clothing. Father's psychological report shows Father believes he has health insurance of some sort but struggles with understanding how to utilize it. Father also does not have, nor has ever had, a driver's license. Nonetheless, Father owns his home, maintains his own bank account, and has no history of criminal activity or substance abuse.

Petitioners filed a petition to terminate Father's parental rights in the Circuit Court for Washington County ("trial court") on December 9, 2019.[3] Petitioners alleged three grounds for termination: abandonment by failure to support, persistence of conditions, and failure to manifest a willingness and ability to assume custody of the Child. Petitioners also alleged that termination was in the Child's best interests. A trial was held on May 29, 2020, at which Mother, Father, and Petitioners all testified. The proof offered by Petitioners largely showed that the Child has been in their care for most of her life and is thriving in their home. Although Petitioners testified that Father has always been respectful to them and present in the Child's life, they believe termination is in the Child's best interests because Petitioners' home is the only home the Child knows, and because Father's current living situation is unsafe for the Child. Pamela B. expressed that while she does not believe Father would ever intentionally harm the Child, she believes Father would have

---

[2] Petitioners assert in their brief that they have had legal custody of the Child since a few days after her birth. The record, however, contains no order or other document corroborating this statement; all parties appear to agree, however, that the Child has been in the legal custody of Petitioners for essentially her entire life.

[3] Mother surrendered her rights to the Child prior to trial, and supports Petitioners' efforts to adopt the Child. Mother is not a party to the present appeal.

great difficulty providing the Child with a safe and stable environment. In contrast, Father testified that he does not want his parental rights terminated for fear of being cut off from the Child entirely. Although Father admitted that he struggles with some daily tasks such as reading and writing, he also testified that he receives disability and is able to manage his own money and live on his own. Father offered no countervailing proof regarding the conditions in his trailer, aside from his own testimony that he was in the process of fixing it up.

The trial court took the case under advisement and issued its written order on June 8, 2020. Concluding that Petitioners failed to meet their burden as to the failure to support allegation, the trial court declined to terminate Father's parental rights pursuant to that ground. The trial court did find, however, that Father's parental rights should be terminated for persistence of conditions and failure to manifest a willingness and ability to assume custody of the Child. The trial court also concluded that termination of Father's parental rights was in the best interests of the Child. Father filed a timely notice of appeal to this Court.

## Issues

Father raises a single issue for review on appeal, which we have slightly rephrased as follows:

Whether the trial court erred in concluding that Petitioners offered clear and convincing evidence to support the alleged statutory grounds for termination of Father's parental rights.[4]

## Standard of Review

Our Supreme Court has explained that:

A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L.Ed.2d 49 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L.Ed.2d 551 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547–48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578–79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as *parens patriae* has a special duty to protect minors....'

---

[4] We also review whether the trial court erred in concluding that termination is in the best interests of the Child. *See In re Carrington H.*, 483 S.W.3d 507, 525–26 (Tenn. 2016) ("[I]n an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal.") (footnote omitted).

3

Tennessee law, thus, upholds the [S]tate's authority as *parens patriae* when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745, 747, 102 S. Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Angela E.*, 303 S.W.3d at 250.

*In re Carrington H.*, 483 S.W.3d at 522–23. Tennessee Code Annotated section 36-1-113 provides the various grounds for termination of parental rights. *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013); *see also* Tenn. Code Ann. § 36-1-113(g). "A party seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest." *Id.* (citing Tenn. Code Ann. § 36-1-113(c)).

In light of the substantial interests at stake in termination proceedings, the heightened standard of clear and convincing evidence applies. *In re Carrington H.*, 483 S.W.3d at 522 (citing *Santosky*, 455 U.S. at 769). This heightened burden "minimizes the risk of erroneous governmental interference with fundamental parental rights[,]" and "enables the fact-finder to form a firm belief or conviction regarding the truth of the facts[.]" *Id.* (citing *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010)). "The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not." *Id.* (citing *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005)). Accordingly, the standard of review in termination of parental rights cases is as follows:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). *In re Bernard T.*, 319 S.W.3d at 596; *In re Angela E.*, 303 S.W.3d at 246. Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. *In re Bernard T.*, 319 S.W.3d at 596; *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596–97. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. *In re M.L.P.*, 281 S.W.3d at 393 (quoting *In re Adoption of A.M.H.*, 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d at 246.

*In re Carrington H.*, 483 S.W.3d at 523–24.

## Discussion

### I.      Grounds for Termination

Here, the trial court found that Petitioners proved two grounds for termination by clear and convincing evidence: persistence of conditions under Tennessee Code Annotated section 36-1-113(g)(3), and failure to manifest a willingness and ability to assume custody of the Child under section 36-1-113(g)(9).  We address each ground in turn.

### A. Persistence of Conditions

Tennessee Code Annotated section 36-1-113(g)(3)(A) explains that a person's parental rights can be terminated when:

> The child has been removed from the home or the physical or legal custody of a parent or guardian for a period of six (6) months by a court order entered at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, and:

> (i) The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent or guardian, or other conditions exist that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent or guardian;

> (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or guardian in the near future; and

> (iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home.

The purpose of the persistence of conditions ground "is to prevent the child's lingering in the uncertain status of foster child if a parent cannot within a reasonable time demonstrate an ability to provide a safe and caring environment for the child."  *In re Navada N.*, 498 S.W.3d 579, 605 (Tenn. Ct. App. 2016).  Consequently, "[t]he failure to remedy the conditions which led to the removal need not be willful."  *Id.* (citing *In re T.S. and M.S.*, No. M1999-01286-COA-R3-CV, 2000 WL 964775, at *6 (Tenn. Ct. App. July 13, 2000)).

This ground for termination applies "only where the prior court order removing the child from the parent's home was based on a judicial finding of dependency, neglect, or abuse."  *In re Audrey S.*, 182 S.W.3d 838, 874 (Tenn. Ct. App. 2005); *see also In re*

*Veronica T.*, No. M2017-00726-COA-R3-PT, 2018 WL 1410909, at *4 (Tenn. Ct. App. Mar. 21, 2018) ("An essential prerequisite to establishing persistence of conditions is evidence of a 'prior court order removing the child from the parent's home . . . based on a judicial finding of dependency, neglect or abuse.'" (quoting *In re Aiden R.*, No. E2015-01799-COA-R3-PT, 2016 WL 3564313, at *9 (Tenn. Ct. App. June 23, 2016))). This Court has reiterated many times that absent a judicial finding of dependency, neglect, or abuse prior to termination proceedings, the persistence of conditions ground is inapplicable. *See, e.g.*, *In re Francis R.*, No. M2018-00613-COA-R3-PT, 2018 WL 5307887, at *7 (Tenn. Ct. App. Oct. 25, 2018) (termination of parental rights based upon persistence of conditions reversed where dependency and neglect order was not in the appellate record); *In re Romeo T.*, No. M2018-00269-COA-R3-PT, 2018 WL 4189575, at *8 (Tenn. Ct. App. Aug. 31, 2018) (termination pursuant to persistence of conditions reversed where prior order relied on did not contain a judicial finding of dependency, neglect, or abuse); *State, Dep't of Children's Servs. v. Hood*, 338 S.W.3d 917, 928 (Tenn. Ct. App. 2009) (same). Indeed, we addressed the importance and process of dependency and neglect actions in *In re Audrey S.*:

> The March 28, 1996 temporary custody order and preceding restraining order were entered in a dependency and neglect proceeding, but they were not based on a judicial finding that Audrey S. was dependent, neglected, or abused. The statutes and rules governing procedure in the juvenile courts provide for three types of hearings in cases where a child is alleged to be dependent, neglected, or abused: (1) preliminary hearings; (2) adjudicatory hearings; and (3) dispositional hearings . . . . The function of the adjudicatory hearing is to determine whether the allegations of dependency, neglect, or abuse are true. . . . [T]he juvenile court's finding that a child is dependent, neglected, or abused must be based on clear and convincing evidence, Tenn. Code Ann. § 37-1-129(c); Tenn. R. Juv. P. 28(f)(1)(i)-(ii). The purpose of the dispositional hearing, which follows the adjudicatory hearing, is to determine the proper placement for a child who has been found to be dependent, neglected, or abused. Tenn. Code Ann. § 37-1-113(a) (2001)[.] . . . The March 28, 1996 temporary custody order resulted from a preliminary hearing, not an adjudicatory hearing, and the restraining order was designed merely to preserve the status quo in advance of the preliminary hearing. The temporary custody order contains an implicit judicial finding of probable cause that Audrey S. was dependent, neglected, or abused. It does not contain a finding, either explicit or implicit, that Audrey S. was in fact dependent, neglected, or abused. The juvenile court never held an adjudicatory hearing on [petitioner's complaint] for temporary custody of Audrey S., and there is no other court order in the record prior to the filing of the joint termination petition that reflects a finding of dependency, neglect, or abuse with respect to Audrey S. Accordingly, the

6

juvenile court erred in relying on Tenn. Code Ann. § 36-1-113(g)(3) as a ground for terminating [mother's] parental rights to Audrey S.

182 S.W.3d at 874–75 (some citations omitted). Importantly, "the child must not only have been adjudicated dependent and neglected, but he or she must also have been removed from the defendant parent's home." *In re Veronica T.*, 2018 WL 1410909, at *4 (citing *In re Mickia J.*, No. E2016-00046-COA-R3-PT, 2016 WL 5210794, at *5 (Tenn. Ct. App. Sept. 19, 2016)).

Here, the record contains only one document regarding custody of the Child prior to the termination proceedings. On November 14, 2019, the Juvenile Court for Johnson City ("juvenile court") entered an order providing that Father "is in agreement . . . that custody of his daughter shall remain with [Petitioners,]" and that "this is in [the Child's] best interest." This order provides nothing regarding dependency, neglect, or abuse, but states that it arises from a dispositional hearing. Accordingly, this order is different from the one at issue in *In re Audrey S.*, because that case dealt with a preliminary hearing order. Nonetheless, like the record in *In re Audrey S.*, the record here does not conclusively reflect whether a juvenile court held an adjudicatory hearing to determine whether the Child was dependent, neglected, or abused in Father's care. Petitioners attempt to address this issue on appeal, arguing that the November 2019 order establishes that the Child was adjudicated dependent, neglected, or abused in Father's care based upon one sentence in the order: "This matter was set for a Dispositional Hearing." According to Petitioners, because a dispositional hearing is the final step in a dependency and neglect proceeding, *see In re Audrey S.*, 182 S.W.3d at 874–75, this Court may presume that a judicial finding of dependency, neglect, or abuse was made against Father. In support, Petitioners rely on *In re Jude M.*, No. E2020-00463-COA-R3-PT, 2020 WL 6233742 (Tenn. Ct. App. Oct. 22, 2020).

However, *In re Jude M.* does not help the Petitioners here. In that case, the father of a young child filed a petition for emergency custody after the child's mother began to struggle with mental health issues and substance abuse. *Id.* at *1. The father's petition was not entered into the record. *Id.* The juvenile court entered an order granting temporary physical custody of the child to the father, finding that the mother was struggling to care for herself and the child, and lacked stable housing and employment. *Id.* After mediation and a subsequent hearing, the juvenile court entered a second order, a mediated agreement, in which it concluded that father would have custody of the child, mother would have supervised visitation, and that this arrangement was in the best interests of the child. *Id.* at *1–2. Later, the father and his wife filed a petition to terminate the mother's parental rights, alleging, inter alia, persistence of conditions pursuant to section 36-1-113(g)(3). *Id.* at *2. After the trial court terminated her parental rights pursuant to this ground, the mother appealed, arguing that the record did not sufficiently indicate that the child was adjudicated dependent and neglected in the mother's care. *Id.* at *4–5.

This Court agreed with the mother, concluding that "whether [f]ather alleged that the [c]hild was a dependent and neglected [c]hild in his emergency petition cannot be

discerned from the juvenile court's findings." *Id.* at \*13. We explained that "this Court has previously reviewed the substance of a parent's petition to determine whether the allegations amounted in substance to allegations of dependency and neglect, pursuant to the statutory definition of a dependent and neglected child, when the petitioning parent failed to invoke the statutory language in the petition." *Id.* at \*12. We noted, however, that because there was no petition in the record in that case, we could look to the "juvenile court's orders for findings related to allegations of dependency and neglect, comparing the court's findings to the statutory definition" in order to discern whether allegations of dependency and neglect had been made. *Id.*

Based on the juvenile court's findings that "[m]other was struggling to care for . . . the parties' minor child" and that placing the child in father's custody was "in the best interest of the child[,]" we concluded that the record did not sufficiently indicate that the father had alleged the child was dependent and neglected in the original petition, much less that those allegations were proven. *Id.* at \*13. Pertinent to the case at hand, we also noted that "the juvenile court did not state in either order that the hearing giving rise to the order was a preliminary, adjudicatory, or dispositional hearing based on allegations of dependency and neglect." *Id.*

Returning to the present case, Petitioners assert, based on *In re Jude M.*, that the November 2019 order provides enough for us to determine that allegations of dependency and neglect were leveled against Father and then found to be true by the juvenile court. Petitioners aver that because the order provides that it arises from a "Dispositional Hearing," we are free to presume that allegations of dependency and neglect against Father were adjudicated by the juvenile court. We are unpersuaded by Petitioners' argument. There is nothing in the record indicating that Petitioners alleged the Child was dependent and neglected by Father, much less that any juvenile court ever held an adjudicatory hearing on those allegations. Such allegations would make little sense in light of the fact that, as best we can discern, the Child has never been in Father's custody. By Petitioners' own testimony, the Child has been with them since mere days after her birth. *See In re Veronica T.*, 2018 WL 1410909, at \*4 (noting that for persistence of conditions to apply, "the child must not only have been adjudicated dependent and neglected, but he or she must also have been removed from the defendant parent's home").

The November 2019 order merely provides that the parties agree custody should remain with Petitioners and that this custody arrangement is in the best interests of the Child. There is no mention of dependency and neglect, the statutory code section addressing dependency and neglect, or any findings of wrongdoing by Father. We do not read *In re Jude M.* so broadly as to mean that a fleeting mention of a dispositional hearing amounts to a judicial finding of dependency and neglect. Petitioners essentially urge us, based on one sentence in the 2019 order, to surmise as to the entirety of the juvenile court proceedings alleged to have occurred. We are not inclined to do so. *See Reid v. Reid*, 388 S.W.3d 292, 294–95 (Tenn. Ct. App. 2012) ("[T]he Court's power to review is limited to

those 'factual and legal issues for which an adequate legal record has been preserved'. . . .The duty to see to it that the record on appeal contains a fair, accurate, and complete account of what transpired with the respect to the issues . . . falls squarely on the shoulders of the parties themselves, not the courts." (citing *Trusty v. Robinson*, No. M2000-01590-COA-R3-CV, 2001 WL 96043, at * 1 (Tenn. Ct. App. Feb. 6, 2001))).

The sparse appellate record renders it difficult to discern the procedural history of this case prior to the termination proceedings; to the extent a juvenile court did adjudicate the Child dependent, neglected, or abused by Father in the past, it was incumbent upon Petitioners to provide proof. *See Jennings v. Sewell-Allen Piggly Wiggly*, 173 S.W.3d 710, 712–13 (Tenn. 2005) (explaining that appellees "share[] the responsibility for ensuring the appellate court has a complete record"). Because the record does not indicate that the Child was ever removed from Father's custody based on a judicial finding of dependency, neglect, or abuse as to Father, the ground of persistence of conditions is inapplicable here, and the trial court's decision is reversed as to this ground. *In re Audrey S.*, 182 S.W.3d at 874–75.

### B. Failure to Manifest a Willingness and Ability to Assume Custody Pursuant to Section 36-1-113(g)(9)

Next, the trial court terminated Father's parental rights pursuant to Tennessee Code Annotated section 36-1-113(g)(9)(A)(iv) and (g)(9)(A)(v). This section provides grounds for termination applicable to putative fathers, in relevant part:

> (9)(A) The parental rights of any person who, at the time of the filing of a petition to terminate the parental rights of such person, . . . is the putative father of the child may also be terminated based upon any one (1) or more of the following additional grounds:
>
> * * *
>
> (iv) The person has failed to manifest an ability and willingness to assume legal and physical custody of the child;
>
> (v) Placing custody of the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[.]

As a threshold matter, there is great confusion amongst the parties and the trial court regarding section 36-1-113(g)(9) and its applicability to this case. For instance, Father asserts in his brief that the trial court erroneously terminated Father's parental rights based upon both sections 36-1-113(g)(9)(A)(iv) and (v), despite the fact that these are separate grounds for termination, and only subsection (g)(9)(A)(iv) was alleged in Petitioners'

complaint. Further, Petitioners inexplicably assert that section 36-1-113(g)(14) is the statute under which we should proceed, notwithstanding the fact that this statute is not mentioned in their petition and was not found by the trial court. Petitioners argue that Father is the legal, rather than the putative, father of the Child, and that as such, section 36-1-113(g)(9) is inapplicable. Petitioners then assert that section 36-1-113(g)(14), although not pled in their petition, was tried by implied consent.[5]

We must first address whether Father is the legal or putative father of the Child, because the grounds for termination listed in Tennessee Code Annotated section 36-1-113(g)(9) are inapplicable to Father if he is the Child's legal parent. *See In re Brayla T.*, No. M2019-02265-COA-R3-PT, 2020 WL 5524618, at *3–4 (Tenn. Ct. App. Sept. 14, 2020) ("[Section] 36-1-113(g)(9)(A) provides grounds for terminating parental rights that are applicable only to putative fathers."); *In re Victoria H.*, No. M2017-01162-COA-R3-PT, 2018 WL 1092156, at *3 (Tenn. Ct. App. Feb. 27, 2018) ("In order to determine whether clear and convincing evidence exists to terminate Father's parental rights under section 36-1-113(g)(9)(A), we must first determine whether Father is a putative father."). This question involves the interplay of two Tennessee statutes, the first one being section 36-1-102(29), which provides in relevant part:

> (A) "Legal parent" means:
>
> (i) The biological mother of a child;
>
> (ii) A man who is or has been married to the biological mother of the child if the child was born during the marriage or within three hundred (300) days after the marriage was terminated for any reason, or if the child was born after a decree of separation was entered by a court;
>
> (iii) A man who attempted to marry the biological mother of the child before the child's birth by a marriage apparently in compliance with the law, even if the marriage is declared invalid, if the child was born during the attempted marriage or

---

[5] Tennessee Code Annotated section 36-1-113(g)(14) is similar to section 36-1-113(g)(9)(A)(iv) and (v), providing that parental rights may be terminated when:

> A parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[.]

Whereas section 36-1-113(g)(9)(A)(iv) and (v) are separate grounds for termination, *see In re E.C.*, No. E2016-02582-COA-R3-PT, 2017 WL 2438574, at *8 (Tenn. Ct. App. June 6, 2017), section 36-1-113(g)(14) is one ground for termination with two distinct elements.

within three hundred (300) days after the termination of the attempted marriage for any reason;

(iv) A man who has been adjudicated to be the legal father of the child by any court or administrative body of this state or any other state or territory or foreign country or who has signed, pursuant to §§ 24-7-113, 68-3-203(g), 68-3-302, or 68-3-305(b), an unrevoked and sworn acknowledgment of paternity under Tennessee law, or who has signed such a sworn acknowledgment pursuant to the law of any other state, territory, or foreign country; or

(v) An adoptive parent of a child or adult;

(B) A man shall not be a legal parent of a child based solely on blood, genetic, or DNA testing determining that he is the biological parent of the child without either a court order or voluntary acknowledgement of paternity pursuant to § 24-7-113. Such test may provide a basis for an order establishing paternity by a court of competent jurisdiction, pursuant to the requirements of § 24-7-112[.]

The term "putative father" is also statutorily defined:

(44) "Putative father" means a biological or alleged biological father of a child who, at the time of the filing of a petition to terminate the parental rights of such person . . . meets at least one (1) of the criteria set out in § 36-1-117(c) and is not a legal parent[.]

Tenn. Code Ann. § 36-1-102(44). Pursuant to Tennessee Code Annotated section 36-1-117(c), in relevant part:

(c) The parental rights of the putative father of a child who has not filed a petition to establish paternity of the child or who has not established paternity of the child who is the subject of an adoption proceeding and who meets any of the following criteria shall be terminated by surrender, parental consent, termination of parental rights pursuant to § 36-1-113, or by waiver of interest, before the court may enter an order of adoption concerning that child:

* * *

(3) The biological father has claimed to the child's biological mother, or to the petitioners or their attorney, or to the department, a licensed child-placing agency, or a licensed clinical social worker who or that

11

is involved in the care, placement, supervision, or study of the child that the biological father believes that the biological father is the father of the child; provided, that if the biological father has previously notified the department of the biological father's claim to paternity of the child pursuant to the putative father registry, § 36-2-318(e)(3), the biological father shall be subject to all the requirements for waiver of notice provisions of § 36-2-318(f)(2) and to all requirements for filing a paternity petition[.]

Based on the foregoing definitions, Father is the putative, rather than the legal, father of the Child. Father does not fall into any of the categories listed in section 36-1-102(29)(A). Moreover, although Petitioners posit in their brief that Father is the legal parent of the Child because his paternity has been confirmed through DNA testing, section 36-1-102(29)(B) makes plain that such is not the case. The DNA test results do not appear in the record, nor is there an order regarding parentage or a voluntary acknowledgment of paternity. Consequently, the record does not show that Father has been established as the legal parent of the Child as Petitioners suggest. *See* Tenn. Code Ann. § 36-1-102(29)(B). Rather, Father falls into the category of putative father inasmuch as he is an "alleged biological father" who, at the time the petition for termination was filed, had "claimed to the child's biological mother" and the Petitioners that he believed himself to be the biological father of the Child. Tenn. Code Ann. § 36-1-102(44); § 36-1-117(c)(3).

As such, the trial court did not err in applying section 36-1-113(g)(9) in this case, as Petitioners alleged this ground in their petition, and Father is not the Child's legal parent. Accordingly, the Petitioners' assertion that section 36-1-113(g)(14) was tried by consent and is now the applicable statute is confounding and need not be reached. Indeed, the Petitioners invited the confusion over this matter by alleging one statutory ground in their petition but a completely different statute on appeal; further, Petitioners allege section 36-1-113(g)(14) as a ground for termination for the very first time on appeal. *See* Tenn. R. App. P. 36(a) (providing that this Court need not grant relief to a party responsible for an error); *State v. Banks*, 271 S.W.3d 90, 170 (Tenn. 2008) ("Tennessee law is well-established that a party who invites or waives error, or who fails to take reasonable steps to cure an error, is not entitled to relief on appeal."); *Main Street Market, LLC v. Weinberg*, 432 S.W.3d 329, 340 n.4 (Tenn. Ct. App. 2013) ("It is well established [] that issues not raised at trial will not be considered for the first time on appeal.").

Having determined that section 36-1-113(g)(9) applies, we must next address Father's contention that the trial court should not have terminated his parental rights pursuant to subsection (g)(9)(A)(v) because it was not pled in the petition for termination.[6] We agree with Father. The petition alleges only Father's failure to manifest a willingness and ability to assume custody of the Child and does not aver that the Child would be at a

---

[6] Petitioners have not argued on appeal that section 36-1-113(g)(9)(A)(v) was tried by consent.

risk of substantial harm if placed in Father's custody. *See* Tenn. Code Ann. § 36-1-113(g)(9)(A)(v). A parent's rights cannot be terminated pursuant to statutory grounds not alleged in the petition. *See, e.g.*, *In re Tristyn K.*, No. E2010-00109-COA-R3-PT, 2010 WL 2867179, at *5 (Tenn. Ct. App. July 22, 2010) ("A trial court cannot terminate parental rights based on a ground that is not alleged in the complaint." (citing *M.D. v. R.L.H.*, No. E2005-00324-COA-R3-PT, 2005 WL 3115874, at *3 (Tenn. Ct. App. Nov. 22, 2005))); *In re M.J.B.*, 140 S.W.3d 643, 656 (Tenn. Ct. App. 2004) (parental rights could not be terminated based on severe abuse when ground was not mentioned in prayer for relief). Thus, the portion of the trial court's order finding that Father's parental rights should be terminated based upon section 36-1-113(g)(9)(A)(v)[7] is vacated.

We turn finally to whether the trial court correctly concluded that Petitioners proved, by clear and convincing evidence, that Father's parental rights should be terminated pursuant to section 36-1-113(g)(9)(A)(iv).[8] The trial court found that Father failed to manifest a willingness and ability to assume custody of the Child. Specifically, the trial court found that "Father has not filed for or contested the [P]etitioners' legal custody of the [C]hild[;] in fact, he agreed to [P]etitioners being named legal custodians in the Juvenile Court Order." The trial court further found that "[Father] is simply not capable of providing the care and supervision for the [C]hild[.]"

The record does not preponderate against the trial court's findings with regard to this ground. Although Father claimed at trial that he would like to obtain custody of the Child, the trial court correctly noted that Father has never taken any steps to do so. Moreover, Father's testimony at trial reflects an awareness that his living conditions are unacceptable for a child, inasmuch as he testified that he was in the process of trying to improve his trailer and install an adequate roof. Nonetheless, the Child has been in the custody of the Petitioners for over three years, and Father has not taken the necessary steps to make his home suitable for the Child. *See In re Zaylee W.*, No. M2019-00342-COA-R3-PT, 2020 WL 1808614, at *5 (Tenn. Ct. App. Apr. 9, 2020) ("[A] parent must have demonstrated willingness by attempting to overcome the obstacles that prevent them from assuming custody[.]"); *In re Rilyn S.*, No. E2018-00027-COA-R3-PT, 2019 WL 1130442, at *8 (Tenn. Ct. App. Mar. 12, 2019) (addressing this ground for termination and noting that we look to "the father's actions, not his expressions of intention" (citing *In re E.C.*, 2017 WL 2438574, at *8)). Although we sincerely commend Father for his consistent involvement in the Child's life, we cannot conclude that the record preponderates against

---

[7] The trial court's final order states that subsections (g)(9)(A)(iv) and (v) are two elements of one ground for termination, suggesting that the trial court conflated section 36-1-113(g)(9) with section 36-1-113(g)(14). This error is harmless, however, in light of our ultimate conclusion that clear and convincing evidence supports termination of Father's rights pursuant to section 36-1-113(g)(9)(A)(iv), and because termination based upon section 36-1-113(g)(9)(A)(v) is vacated.

[8] We have previously explained that grounds for termination provided in section 36-1-113(g)(9) "are less difficult to prove than the grounds in [section] 36-1-113(g)(1)–(8)[.]" *In re E.C.*, 2017 WL 2438574, at *8 (quoting *In re H.A.L.*, No. M2005-00045-COA-R3-PT, 2005 WL 954866, at *9 (Tenn. Ct. App. Apr. 25, 2005)).

the trial court's finding that Father has never attempted to assume custody of the Child. Indeed, until this juncture Father has apparently been content to allow the Petitioners to maintain custody. *See In re Jaylan J.*, No. W2019-02025-COA-R3-PT, 2020 WL 7861378, at *23 (Tenn. Ct. App. Dec. 22, 2020) (mother demonstrated willingness to assume custody of child through stated willingness as well as efforts to file *pro se* petition for custody); *In re Colton B.*, No. M2018-01053-COA-R3-PT, 2018 WL 5415921, at *10 (Tenn. Ct. App. Oct. 29, 2018) (expounding on how a parent's omissions also speak to willingness to assume custody).

The evidence also establishes that Father is simply unable to assume custody of the Child under his present circumstances. Father has great difficulty caring for himself and, unfortunately, lives in distressing conditions. *See In re Cynthia P.*, No. E2018-01937-COA-R3-PT, 2019 WL 1313237, at *8 (Tenn. Ct. App. Mar. 22, 2019) ("Ability focuses on the parent's lifestyle and circumstances." (citing *In re Maya R.*, No. E2017-01634-COA-R3-PT, 2018 WL 1629930, at *7 (Tenn. Ct. App. Apr. 4, 2018))); *In re Rilyn S.*, 2019 WL 1130442, at *8 ("As to this ground, courts consider whether a father is in a position to care for the child."). Father offered no evidence at trial that the conditions depicted in his home have substantially improved, and Father agreed that the trailer lacks an adequate roof and has water leaks.[9] The record also shows that Father has difficulty managing health insurance and seeking healthcare generally, both of which are of the utmost importance in caring for a toddler. In that vein, Father also testified that he would not know what to feed the Child if he were to assume custody, a statement which inspires little confidence that Father would be able to safely parent the Child.[10] Overall, the record supports the trial court's finding that, sadly, Father is not "in a position to care for the [C]hild" at this time. *In re Rilyn S.*, 2019 WL 1130442, at *8.

We conclude that Petitioners presented clear and convincing evidence that Father's parental rights should be terminated pursuant to Tennessee Code Annotated section 36-1-113(g)(9)(a)(iv). The judgment of the trial court is affirmed as to this ground.

## II.    Best Interests

In addition to proving at least one statutory ground for termination, a party seeking to terminate a parent's rights must prove by clear and convincing evidence that termination is in the child's best interests. Tenn. Code Ann. § 36-1-113(c). Indeed, "a finding of unfitness does not necessarily require that the parent's rights be terminated." *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005) (citing *White v. Moody*, 171 S.W.3d 187 (Tenn. Ct. App. 2004)). Rather, our termination statutes recognize that "not all parental conduct is irredeemable[,]" and that "terminating an unfit parent's parental rights is not always in the child's best interests." *Id.* As such, the focus of the best interests analysis is

---

[9] Father did testify that some of the debris outside of and within the trailer had been removed.

[10] This conclusion is also buttressed by Father's psychological evaluation that was offered into evidence without objection, and which provides that Father's "intellectual and adaptive functioning concerns are significant when it comes to obtaining custody of [the Child]," and that Father would likely require "a high level of support" if he were to do so.

14

not the parent but rather the child. *Id.*; *see also White*, 171 S.W.3d at 194 ("[A] child's best interest must be viewed from the child's, rather than the parent's, perspective.").

Tennessee Code Annotated section 36-1-113(i) provides nine factors for analyzing best interests, and we address the trial court's findings as to each factor in turn. We note, however, that this list is non-exhaustive. *In re Marr*, 194 S.W.3d at 499. "Ascertaining a child's best interests does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s nine factors and then a determination of whether the sum of the factors tips in favor of or against the parent." *Id.* "The relevancy and weight to be given each factor depends on the unique facts of each case." *Id.* "Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." *Id.* (citing *In re Audrey S.*, 182 S.W.3d at 877).

The first best interest factor provides:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

Here, the trial court found that Father "has not made, and in all probability cannot make, any adjustment of his circumstances or conditions that would make it safe and in the Child's best interest to be in Father's home." The record does not preponderate against this factual finding. As discussed already, the record reflects that Father's living conditions are unsafe for a young child, and Father offered no counter-proof that these conditions are likely to significantly improve any time soon.

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

The trial court found that factor two is inapplicable here and we agree; there is no information in the record regarding whether Father has been provided any social services.

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

As it is undisputed that Father consistently visits the Child, the record preponderates in favor of the trial court's finding that this factor favors Father. Pamela B. testified that on occasions when Father is without transportation, he walks to see the Child. Father's commitment to his scheduled visitation with the Child militates heavily against termination.

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

15

As to the fourth factor, the trial court found that "although Father has regularly visited the [C]hild, there is not really a meaningful relationship. It was not clear from the evidence that the [C]hild even understands who Father is." Here, we cannot conclude that the record preponderates in favor of the trial court's findings. Although Pamela B. indeed testified that the Child does not understand Father's role in her life, Father testified that the Child is happy and excited to see him at visitation, plays with Father, and allows Father to pick her up. Given the tender age of the Child, the foregoing suggests a loving relationship between the Child and Father, notwithstanding whether the Child refers to Father as "father." This factor militates against termination.

> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

Here, the trial court found that given the Petitioners' home is the only one known to the Child, "uprooting [the Child] from this environment would be devastating to her." We must conclude that the record preponderates in favor of this finding and that factor five militates in favor of termination. Father does not dispute that Pamela B. is the only person who has ever parented the Child on a daily basis, and Pamela B. has the ability to stay home with the Child full-time. The Child and Pamela B. have an established, structured routine under which the Child is thriving. In contrast, there is no indication the Child has ever been in Father's custody, nor is there any indication the Child has ever been outside of her current physical environment for a long period of time. Moreover, placing the Child in Father's home, in its current state, would be incomprehensible given the health and safety risks. Accordingly, factor five supports termination of Father's rights and is compelling under the circumstances.

> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

The trial court found, and we agree, that factor six is inapplicable in this case.

> (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

With regard to factor six, the trial court aptly found that "Father's home is not healthy and safe for a three-year old child." As we have already discussed at length, the record supports this finding, and factor seven weighs in favor of termination.

> (8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child;

16

Addressing the eighth factor, the trial court found that "[t]he proof is unrefuted that Father suffers from an intellectual disability[,]" and noted that Father's impairments would be "detrimental to the [C]hild and prevent him from effectively providing a safe home and stable care . . . for the [C]hild." Again, we must conclude that the record preponderates in favor of the trial court's findings. Father did not dispute the evidence that he suffers from a mental impairment, although he did testify that he did not believe this impairment renders him unable to care for the Child. Nonetheless, the record contains numerous examples of Father's difficulty comprehending the needs of a young child, not least of which include the state of Father's home and Father's admission that he does not know what the Child needs to eat. Although we certainly do not fault Father for his lack of understanding, we also cannot conclude that the record preponderates against the trial court's findings as to this factor. Factor eight weighs in favor of termination.

> (9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

The trial court found that factor nine did not favor any party because although Father has not paid support consistently, Father struggles financially and subsists largely on long-term disability. The record preponderates in favor of this finding.

Considering the foregoing in toto, we agree with the trial court that "the combined weight of all of these factors amount[s] to clear and convincing evidence that termination [of Father's parental rights] is in the [C]hild's best interests." Particularly compelling in this case is the fact that the Child has never lived in any home other than Petitioners', *see In re M.E.T.*, No. W2016-00682-COA-R3-PT, 2016 WL 6962306, at *10 (Tenn. Ct. App. Nov. 29, 2016), and that the Child would more than likely be placed in an unhealthy and unsafe physical environment if Father gained custody. Although we feel the utmost sympathy for Father's situation, we are required to consider best interests from the Child's perspective, rather than Father's. *See White*, 171 S.W.3d at 194. Consequently, we conclude that the evidence clearly and convincingly establishes that termination of Father's parental rights is in the best interests of the Child.

## Conclusion

The judgment of the Washington County Circuit Court is hereby reversed in part, affirmed in part, vacated in part, and remanded for further proceedings consistent with this Opinion. Costs on appeal are assessed against Father, Kevin H., for which execution may issue if necessary.

_____

KRISTI M. DAVIS, JUDGE

17